Cynthia Mary SCHAEFER, Plaintiff,

and

County of Stearns, Appellant,

v.

Paul Jerome WEBER, Respondent.

No. C8–96–18.

Court of Appeals of Minnesota.

April 30, 1996.

Roger S. VanHeel, Stearns County Attorney, Richard J. May, Assistant County Attorney, St. Cloud, for appellant.

Stephen P. Larson, St. Cloud, for respondent.

Considered and decided by LANSING, P.J., and HARTEN and SCHULTZ, JJ.*

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

HARTEN, Judge.

In a parentage action, an administrative law judge ordered respondent father to reimburse Stearns County for public assistance paid to the mother. The administrative law judge limited respondent's liability to begin two years before the county's motion for contribution, rather than two years before the filing of the parentage action. The county appeals. We affirm.

## FACTS

In 1987, respondent signed a declaration admitting paternity of J.M.S., a child born earlier that year. In December 1991, the child's mother and appellant Stearns County instituted a parentage action against respondent seeking an adjudication of respondent's paternity, child custody for the mother, ongoing child support under section 518.551, past child support under section 257.66, and other relief.[1] The action then remained dormant until 1995.

On July 28, 1995, the mother and county moved for summary judgment on all issues (most issues were eventually settled by agreement between the parties). Included in the motion was the county's request for an order requiring respondent to reimburse the county for public assistance paid to the mother. The county had paid the mother $18,040 in Aid to Families with Dependent Children (AFDC) benefits from August 1, 1991 to March 31, 1995. An administrative law judge (ALJ) granted the county a $4,110.50 contribution judgment against respondent for AFDC the county paid the mother from August 1993 through March 1995, but denied the county's request for contribution for AFDC payments made before August 1993. The ALJ ruled that liability for such payments was barred by section 256.87 because they were made more than two years before the county's 1995 summary judgment motion. The county appeals.

1. The complaint in the parentage action did not address contribution to reimburse the county for

## ISSUE

From which event is the limitations period for AFDC contribution liability measured— the filing of the parentage action or the filing of the motion specifically requesting such contribution?

## ANALYSIS

This case involves statutory construction; therefore, we review the ALJ's ruling de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

The action against respondent was brought under the Parentage Act, Minn.Stat. §§ 257.51–.74 (1994 & Supp.1995). Section 257.66 contains the following limitation:

> The court shall limit the parent's liability for past support of the child to the proportion of the expenses that the court deems just, which were incurred in the two years immediately preceding the commencement of the action.

Minn.Stat. § 257.66, subd. 4 (Supp.1995).

Statutes governing the AFDC program are contained in chapter 256. *See* Minn.Stat. §§ 256.72–.879 (1994 & Supp.1995). Section 256.87 provides for an action by a county against a parent for AFDC furnished for the benefit of the parent's child:

> A parent of a child is liable for the amount of [AFDC] to and for the benefit of the child, including any assistance furnished for the benefit of the caretaker of the child, which the parent has had the ability to pay. * * * *The parent's liability is limited to the two years immediately preceding the commencement of the action* * * *.

Minn.Stat. § 256.87, subd. 1 (1994) (emphasis added).

The ALJ ruled that the county's contribution demand was governed by section 256.87 and that respondent's liability was limited to the two years preceding the county's 1995 motion. The county argues that respondent's liability instead is governed by section 257.66, which would allow recovery beginning

public benefits it paid to the child's mother.

two years before the parentage action was commenced in 1991. We must determine which event triggers the two-year retrospective limitations period—the bringing of the motion specifically requesting AFDC reimbursement or the filing of the parentage action.

The county relies on *Rieck v. Lambert*, 396 N.W.2d 269 (Minn.App.1986), but our decision in that case is inapposite. In *Rieck*, the child was born in 1983, a paternity action was commenced under chapter 257 in 1984, and temporary support was set in 1985. *Id.* at 270. In 1986, the district court ordered past support for the period 1983 to 1985. *Id.* The appellant obligor conceded that section 257.66 allowed liability for the two years preceding the "commencement of the action" in 1984, but argued that the statute did not permit past support liability for the period *after* that 1984 filing. *Id.* at 271–72. We rejected that argument, holding that past support could be ordered generally under section 257.66 beginning two years before the action was commenced. *Id.* at 272.

The county asserts that *Rieck* establishes that the measuring event for the two-year statute of limitations is the filing of the parentage action. In *Rieck*, however, no public assistance had been paid; only past support from one parent to another was at issue. *Id.* at 270. The parent's liability for past support clearly arose under the Parentage Act, specifically section 257.66. The case is not helpful in identifying the triggering event for a request for AFDC reimbursement under chapter 256.

We agree with respondent that this dispute is governed by our decision in *County of Ramsey v. Shir*, 403 N.W.2d 714 (Minn.App. 1987), *review denied* (Minn. May 28, 1987). There the paternity action was commenced in 1978, and the appellant was adjudicated the child's father in 1981. *Id.* at 715. At that time, the county was ordered to conduct a financial investigation for purposes of child support. *Id.* No further action was taken, however, until 1986, when the county moved for past support. *Id.* The district court ordered contribution for AFDC paid since 1982. *Id.*

We reversed, holding that section 256.87 allowed liability for AFDC contribution only retrospective to two years before the 1986 motion, not two years before the 1978 filing of the paternity action. *Id.* at 716. We noted that the district court had treated the county's motion as a continuation of the paternity action. *Id.* We stated, however, that "[a]ctions for contribution or reimbursement of public assistance payments are separate and distinct from actions to set child support." *Id.* We stressed that the county should have brought a separate action for reimbursement under chapter 256, but, in the interests of judicial economy, we treated the 1986 motion as the commencement of such an action. *Id.* Thus, we used the filing of the actual request for reimbursement as the triggering event for the two-year limitations period. *Id.; see also Isanti County Family Servs. & Welfare Dep't v. Swanson*, 394 N.W.2d 180, 183 (Minn.App.1986) (request for contribution under section 256.87 is action separate from paternity action, liability measured from request); *Hennepin County v. Geshick*, 387 N.W.2d 439, 440–41 (Minn.App. 1986) (although county should have brought AFDC contribution action under section 256.87 separate from paternity action, interests of judicial economy served by treating motion for contribution as commencement of such action for purposes of two-year limitations period).

The county argues that *Shir,* Swanson, and *Geshick* are distinguishable because in those cases the obligor's paternity had already been adjudicated by the time the county demanded AFDC contribution. Here, paternity was formally adjudicated *after* the county brought its 1995 motion. The county contends that applying the above cases when there has been no prior paternity adjudication would not serve public policy because an obligor could seek to delay adjudication to avoid liability for AFDC contribution.

We disagree. The county notes that there generally is a delay between the time paternity is adjudicated and the time associated financial issues are resolved. A county is not precluded, however, from bringing its demand for AFDC contribution earlier; because the two-year period is measured from

the time of the demand, the timing of any subsequent adjudication of paternity does not affect the scope of contribution liability.

Our caselaw establishes that a request for AFDC contribution should be the subject of an action under chapter 256, separate from a parentage action or any other child support action, and that the commencement of the chapter 256 action triggers the two-year limitations period. Therefore, the ALJ correctly ruled that the filing of the parentage action in 1991 did not trigger the two-year period.

The county did not file a separate action for AFDC contribution in this case. The ALJ chose, in the interests of judicial economy, to treat the 1995 motion as the commencement of such an action; in order not to undermine this stated goal, we will do the same. We again emphasize, however, that an action for AFDC contribution is more properly brought in a separate action under chapter 256. We caution that facts or circumstances may arise in future cases where the lack of a separate action would be fatal to a demand for reimbursement.

We hold that the district court did not err in limiting respondent's liability for AFDC contribution to the period beginning two

years before the county's 1995 request for contribution.[2]

### DECISION

■ Because a county's request for AFDC contribution is properly the subject of a separate court action under chapter 256, the two-year retrospective limitations period in section 256.87 applies to such a request and limits a parent's contribution liability to the period beginning two years before the commencement of that action. In the interests of judicial economy, the filing of a motion for contribution within a parentage action may be treated as the commencement of an action under chapter 256. The ALJ did not err in limiting respondent's contribution liability to the period beginning two years before the county's 1995 motion.

**Affirmed.**

■

2. Because this result is based on statutory interpretation, we need not address the county's argument that the ALJ improperly based its decision on the doctrine of laches.